Thank you, Your Honors. I may please the court and counsel. My name is Richard Wall. I represent the appellant, Robert Waggy. I would like to reserve three minutes for rebuttal. You know, I have been thinking about this case a bit before coming up here this morning. I think maybe the most fact that I'm just going to put out there, because I don't think it's legally relevant, but I think it's a fact that has been driving this case from the beginning is the fact that Mr. Waggy is a convicted sex offender. I think that's been a... Well, it's a little more than that, counsel. He's a convicted sex offender who's been making criminal threats to kill state officials who have been involved in his prosecution and investigation. That's a pretty serious matter. Well, Your Honor, I would respectfully disagree with that statement. Well, I read the record. If you're going to try and convince me that he didn't say it, I suggest you move on to a different topic. Well, no, I'll get right to that then. He did make statements. They were clearly not threats of any kind, and I'll explain why that should be clear. What happened here is Mr. Waggy is ordered, as part of his probation, to attend sexual deviancy treatment, it's called. And probably the most important part of that treatment, and this is in the treatment provider's declaration that was part of the record on summary judgment, is for the offender to learn how to open up and express their feelings, how to talk about things that are bothering them, and to be completely honest with the treatment provider so that the treatment provider can help them to deal with those issues. That's what is really the primary purpose of the treatment. We all have the kinds of thoughts that Mr. Waggy expressed here. We just don't act on them, and we don't normally tell anybody about them. But the whole idea of this treatment is to get those things, to bring those things up to the surface. Without going into all the historical background on this, what happened in this particular session is that Mr. Waggy was clearly upset. His treatment provider asked him what was going on in his life at that time that was causing him to be upset. And he explained to him that he was in basically this battle with CPS because he was trying to get custody of his daughter back. His daughter was not the victim of this offense, by the way. But counsel, if I can interrupt you for just a second, isn't this really a question as to whether or not Ms. Fitzgerald has immunity? Whether or not Mr. Waggy made the statements, that's a different issue. But here what we're really talking about is whether or not there's absolute immunity on the part of Ms. Fitzgerald, for example. And I will try to get at that as quickly as I can, but I do want to address this just briefly, that these statements were made as part of his treatment. His treatment provider said these were the appropriate responses to the questions that were being asked. But that issue was addressed to the judge who issued the warrant, right? And that was all addressed by the judge at that time. My concern is whether or not there's any, if there's any case law, any precedent that we can look to that would cause us to believe that Ms. Fitzgerald did not have absolute prosecutorial immunity. Certainly. There's a whole line of Supreme Court cases that talk about a prosecutor being absolutely immune only when they act in a prosecutorial fashion, that is, they perform a prosecutorial function. And you're saying that Ms. Fitzgerald was not in this particular case? No, because she was the sole complaining witness with regard to the... But wasn't she attaching or incorporating reports and statements by other folks? I mean, how else could a prosecutor ever pursue something before a judge to seek a warrant or to seek a violation of probation except for by doing that?  So he gets bail.  He's first arrested for the, I'm going to recreate Columbine statements that are alleged. And then he's charged with a crime, felony harassment. And that is the basis of these reports that Ms. Fitzgerald ultimately attaches to her. So he gets bail. There are two warrants, right? Right. He's first arrested for the, I'm going to recreate Columbine statements that are alleged. And he gets bail and gets out. And then the prosecutor, Ms. Fitzgerald, proceeds to go forward on an arrest warrant for not satisfying his probation conditions, right? So explaining your theory that when she did that, she's not acting in a prosecutorial role that she's no longer entitled to immunity. Because at that point, she's requesting a warrant for violation of probation conditions. The specific violation that she alleges under oath in her declaration is failure to make progress in treatment. If you look at the reports of Detective Hawley on the felony harassment charge, there is nothing in there that indicates that anything in that report is related to any probation condition or that there is any basis for alleging a violation of a probation condition. And, in fact, Ms. Fitzgerald knew that at the time. But she had nothing else. She chose it upon herself to make the allegation that Mr. Waggie had violated his probation conditions by not making progress in treatment. Go ahead. I'm sorry. Didn't she attach a copy of the police report to her motion? Yes. Okay. So in essence, again, she was saying, Judge, look at these facts that are set forth in this police report. We believe based on these facts that the defendant has violated the terms of probation. Right? But there's absolutely nothing in those reports that could possibly tell you he had violated any terms of probation. Doesn't even set out what condition, what the conditions are. And certainly doesn't say any, there's nothing in those reports that would indicate Mr. Waggie is not making progress in his sexual deviancy treatment. Nothing related to that whatsoever. And she was very well aware of that, which is why ten days later, and I think the evidence clearly supports this, she has Mr. Wiggs issue the notice of violation. Again, this is ten days after he's arrested on this warrant for a probation violation, which says in there, again, under oath, I and Kelly Fitzgerald together determined that Mr. Waggie was not making progress in treatment. Why is this happening ten days after he's arrested? Ten days after the warrant's requested? This is an attempt to cover what she knew was a request that was not supported by the material she had submitted. Okay, if you want to do a rebuttal argument, just watch your time limit. Before he sits down, I would like to ask, I'm looking at the chronolog that the Department of Corrections officers prepared, and I see a number of notations that begin a month earlier, in March of 2004, reflecting what the CCO reports to be a continuing fixation on harming Mr. Traylor. So he was saying things outside of his counseling to his community correctional officer, which caused his community correctional officer to recommend changes in the methods and manners of supervision out of fear that he might carry some of them out. Isn't that what the record shows? That's one, you can interpret it that way, but again, there's nothing there that says he had violated any probation condition. Well, counsel, I don't know, maybe we're just splitting hairs here, but the way I read the chron file, it looks to me like the people who are charged with protecting the community from offenders like your client is reporting that based on a behavior over a period of time, they've got a concern that he may actually carry out some harm to the officers from DSHS and others involved in his case. But you can't arrest him for that? Well, you can certainly change the terms and conditions, including suggest to the court that his probation has been violated. But they didn't. Well, ultimately they did. Ultimately, but well after Ms. Fitzgerald went and got this warrant. She was the only person at the time this warrant was issued who was making any claim that Mr. Wigand... She's not the only person, counsel. I'm looking at excerpt of record 72, which is also stamped 1563 and 250, in which in the chron file, without any reference to the deputy prosecutor, the CCOs in the course of supervising Mr. Wigand are making notations about their concerns about his continuing fixation on hurting Mr. Traylor. Well, the fact that he has a fixation on Mr. Traylor is not a violation of his probation conditions. He hasn't done anything that would warrant his arrest at that point. I hear your argument, counsel. He still hasn't. You want to save some time for rebuttal? Good morning, Your Honors. May it please the Court and counsel. Heather Yackley on behalf of Spokane County. Ms. Fitzgerald and several others, although those are not issues, the dismissal of, for instance, Mr. Tucker is not an issue before the court. The two issues before the court are, I believe it was Judge Benitez who specifically stated, well, doesn't the prosecuting attorney get to, isn't this how they get arrest warrants before the court? And that's exactly the issue here. Ms. Fitzgerald specifically attached the documentation that was provided by Holy, and there was also the 331 report by the CCOs that she attached because that was part of Holy's. The evidence also in the record, which is in her deposition, specifically states, look, not only did I rely on those, I also relied on the fact that I have dealt with Mr. Wege, I am familiar with him, and I have dealt with him since the initial prosecution in 2000. And those all add up to her discretionary authority to, as a prosecuting attorney, make a decision. And it's absolutely a prosecutor's responsibility as an advocate for the state to request the arrest warrants. And that's what happened in this case. She was well within her authority as an advocate for the state, and that's been set forth since Imler v. Pacman in 1976. Now, the Kalina case, I also think that was addressed in the briefing, and plaintiff's counsel argues that that is exactly what she was doing in terms of certifying the statement. The distinction with her motion for the bench warrant is that she states, the only thing that she's attesting to is, or I certify under penalty of perjury, is that by failing to make progress in the sexual deviance program, that's what the arrest warrant was for. Then she says, see the attached documentations. It's almost a moving target that Mr. Wege has presented. In his initial briefing he was saying, and in fact in his deposition he says, this was a false arrest because she was acting outside of her scope because she was addressing, or she was acting as an investigator. Well, now today we're talking about something entirely different. She couldn't have done any further investigation. One of the arguments the plaintiff makes is that she didn't do any investigation. She didn't talk to Mr. Colson, and that's what was being referred to at the beginning of the argument by plaintiff's counsel. Mr. Colson, that's a red herring. It doesn't matter what Mr. Colson says. The evidence is very clearly established that she has the authority to make the arrest, and it was within the discretionary act that she was doing it. I think you take her outside of the absolute immunity had she done any investigation. So that's the distinction that needs to be drawn or can be drawn from the Kalina case. She was well within her authority, and I also think it's crucial that this went to the judge. The judge signed off on it. He didn't ask for any further documentation, and quite frankly, there was absolutely no request for hearing on the parole violation, which would have been the appropriate time to address the issue as to whether or not this was a false arrest. That didn't occur. Can I ask you a question? Do you think that her statement that she believed that he was not making any progress is really a conclusion of law more than a statement of fact? I do, Your Honor, and I think that's the distinction that is drawn in the Kalina case as well. The court there says that had she not ---- Sorry, I thought I had it marked, but basically the case states that these cases make it quite clear that petitioner's activities in connection with the preparation and filing of two of the three charging documents, the information and the motion for an arrest warrant are protected by absolute immunity. Indeed, except for her act in personally attesting to the truth, and that's at 522 U.S. 129, which is the Kalina case, and that's what you were asking in your question to Mr. Wall. There is a distinction. This is no different than, and forgive mine, I'm not familiar with criminal charges to a great extent, so my example is a bit weak, but this is no different than a prosecutor having to make a determination as to whether or not to charge an individual with first-degree murder or second-degree murder. It's the same thing. That's their discretionary authority, and that is what is specifically entitled to the absolute immunity issue. I thought the problem in Kalina was that when Deputy Prosecutor Kalina signed the Certificate of Probable Cause, she was actually signing the affidavit establishing the facts to show that Kalina or Fletcher had committed the burglary. Absolutely, and that's the distinction, and that's why I wanted to point out that that's not what Ms. Fitzgerald was attesting to when she signed it. She's simply saying, as Judge Benitez pointed out, that's within her discretionary authority to say, by failing to make progress, that's how they make the decision as to what to charge somebody with. I don't know. Mr. Wall did not address it. I don't know if the Court wants to hear anything in terms of his request on Spokane County for lack of a better word. It's covered in the briefs, so it's before us. It's really up to you if you want to address it. Your Honor, I would just point out very, very briefly, I think the briefing is fairly clear, and I think the district court decision was appropriate in basically finding that there was simply no evidence of a lack of training. Mr. Wege has stated that a reasonable jury could find, but even though we're here under de novo on a summary judgment standard, it's not enough to simply say they could find. There has to be some sort of evidence set forth under the summary judgment standard, and it simply does not exist here. There is evidence in the record in both Ms. Fitzgerald's affidavit as well as her deposition and Ed Hayes, who has been a prosecuting attorney at Spokane County for over 20 years. I don't exactly know the specific years off the top of my head, that her training was on the job. That's how it's done. He's not aware of training any other way. There's no particular class that an individual goes to to learn how to file a request for an arrest warrant or a search warrant. It simply owns job training. So there's simply no evidence in the record that establishes that there was any sort of ineffective or inefficient training, and quite frankly, in terms of any monopoly. I think there has to be evidence of a custom or policy of the municipality for that issue to be looked at. Yes, and I don't believe that there's any evidence in the record as to that either, Your Honor. Quite frankly, there was no discovery done as to those issues. The only deposition that was taken was Ms. Fitzgerald. There's no policies and procedures or documentation that was requested whatsoever, and so to be able to simply, as Mr. Wege does, simply say a reasonable jury could find, there's no basis to make that statement. And jurors aren't allowed to simply assume that there is something because there's a lack of evidence. Does this Court have any further questions? I have none. I have none. No, thank you. Thank you, Your Honor. Mr. Wall, even though I think your time might have been up or close to it, I'll give you an extra two minutes. Kathy. Thank you, Your Honor. Kathy, why don't you add two minutes so we can make your rebuttal order? Thank you, Your Honor. I would like to address the question that you raised, Judge Benitez, whether or not Ms. Fitzgerald's statement in her warrant request that Mr. Wege was not making progress in treatment is a conclusion of law. I would argue it's absolutely not a conclusion of law at all. It's a statement of a fact. Let me correct myself. I said a conclusion of law. I meant a conclusion, period. It's a conclusion that she reached as a result of reviewing the documents that she presented to the Court. I apologize for that. And that may very well be that she reached that conclusion on her own, reviewing basically the report of the harassment charge. But that makes her a witness because there's nothing in that report that relates in any way to Mr. Wege's probation conditions or whether or not anything he did would have violated those conditions. How do you answer the argument of your opposing counsel that making that conclusion is like a prosecutor making a conclusion to charge first-degree murder or second-degree murder? What's different about it? Well, here's what's different about it. First of all, when you're talking about probation violations, those would normally come from DOC or from somebody who has authority to set those conditions and determine whether or not a person has violated them. And in this particular case, Ms. Fitzgerald didn't wait for any word from DOC that they thought Mr. Wege wasn't making progress in treatment. In fact, you look at the chrono report, it's clear she made this decision on her own, called them and said, I'm going to do this. And they said, well, we don't know why or we don't even think you have authority to do it, but whatever. Then Mr. Wege, who later submits the violation report from DOC saying, oh, we concluded he was not making progress in treatment and this is 10 days later, hasn't even talked to Ms. Fitzgerald at the time she gets this warrant. And if Ms. Fitzgerald was really relying on Detective Hawley's report, why does Mr. Wiggs lie to me in his deposition and why does she lie to me in her deposition saying that she talked to Mr. Wiggs the morning she got this warrant and he requested that she get it when that clearly didn't happen? Your extended time is up, so I don't want to cut you off in mid-sentence, but you've got to conclude, thanks. Well, we thank both counsel for their arguments. And the case of Waggie v. Spokane County is submitted.
judges: Benitez, Gould, Tallman